UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE E. MODICA, SR., | No. 2:15-cv-00057 MCE AC PS |
| Plaintiff, | |
| v. | ORDER and |
| RUSSELL, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I.     Introduction

        Plaintiff is a former state prisoner, incarcerated under the authority of the California Department of Corrections and Rehabilitation (CDCR), who proceeds pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff sues defendants G. Russell and A. Olah, correctional officers at the California Correctional Center (CCC) in Susanville, on claims that during plaintiff's incarceration there defendants violated plaintiff's constitutional rights by engaging in acts of retaliation, excessive force, cruel and unusual punishment, and conspiracy.  Plaintiff was not incarcerated when he filed the operative verified complaint on January 8, 2015, and has remained unincarcerated throughout this litigation.

        Defendants are represented by separate counsel.  Presently pending are defendants' separate motions to dismiss this action on statute of limitations grounds.  The motions were consolidated and heard on this court's January 20, 2016 law and motion calendar.  Plaintiff

1   Antoine E. Modica, Sr., appeared by telephone on his own behalf.  Deputy Attorney General

2   Byron Miller appeared on behalf of defendant Olah.  Attorney Shanan Hewitt appeared on behalf

3   of defendant Russell.

4       For the reasons that follow, this court recommends that defendants' motions to dismiss be

5   denied without prejudice, and defendants be directed to answer the complaint.  The court denies

6   as premature plaintiff's motion to compel discovery.

7       II.     Background

8       Plaintiff's verified complaint, filed January 8, 2015, avers that plaintiff was released from

9   prison in December 2012.  ECF No. 1 at 8, ¶ 13.  In his opposition to defendant Olah's motion to

10  dismiss, plaintiff states that he was released on December 16, 2012.  See ECF No. 21 at 3.[1]

11      The complaint alleges that, on October 23, 2011, while waiting for his prison dorm to be

12  unlocked, plaintiff was approached by defendant Olah who instructed him to place his hands up

13  against the wall.  Plaintiff complied.  While plaintiff was in this position, defendant Russell

14  "pressed a strange hot metal box" against the back of plaintiff's left hand "with excessive force."

15  Id. at 5.  Plaintiff alleges, id. at 5-6:

> With a visible burn mark/brand it left and a painful sting as C/O Olah and C/O Russell laughed at me.  I screamed out in pain, "Hey, you just burned me."  C/O Russell turned and displayed a colored box with a metal tip in his hand, then asked to his co-worker C/O Olah, "You smell something," as he mocked me.  He Russell said, "it smells like porks skin."  C/O Russell stared at me and he in a cold manner said, "You scream like a little bitch, you scream like a little bitch."  Adding insult to injury.  I was in fear.

21      According to the complaint, on October 29, 2011, plaintiff sought mental health care due

22  to fear of retaliation by Russell and Olah if plaintiff reported the incident.  On October 30, 2011,

23  plaintiff obtained a medical examination and filed an administrative grievance alleging officer

---

[1] For present purposes, the court will assume the accuracy of this representation.  The date can be confirmed by CDCR records, as is therefore subject to judicial notice.  This court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned.  See Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

misconduct by defendant Russell, with the cooperation of defendant Olah.  Plaintiff was interviewed by a member of CDCR's Office of Internal Affairs (OIA) the same day, and the interview was videotaped.  Plaintiff requested placement in segregated housing for his own safety, and the request was granted effective October 30, 2011.  Plaintiff alleges that while he was "[i]n administrative segregation C/O Russell continued to retaliate against me."  ECF No. 1 at 7.

On November 11, 2011, plaintiff was visited by the head of Inmate Appeals who viewed plaintiff's burn and informed plaintiff that his appeal was being reviewed by the OIA.

In November 2011, plaintiff filed a claim with the California Victim Compensation and Government Claims Board under the California Tort Claims Act (CTCA).  ECF No. 1 at 8.  Plaintiff states, without providing further information, that "this claim was denied clearing the way for me to file this civil action."  Id.

In March or April 2012, three members of CDCR's Office of Inspector General (OIG) conducted an audio-recorded interview of plaintiff.

When plaintiff was released from prison in December 2012, his administrative grievance and the OIA investigation were still pending.  The complaint alleges that, in March 2013, plaintiff received "a memo in the mail stating C/O Russell had violated CDCR Policy and Procedure and my claim was legitimate [;] a violation did occur[] . . . [but] I was not offered any support or relief."  ECF No. 1 at 9.  Plaintiff asserts that, despite several attempts, he was unable to exhaust his administrative grievance at the third level.  Id. at 8-9.

Plaintiff avers that he still bears the "branded scar on my left hand, to this day," id. at 4, and suffers psychological injury; he seeks compensatory and punitive damages pursuant to this action.  Upon screening the complaint pursuant to 28 U.S.C. § 1915A, this court found that the complaint states the following claims against defendants Russell and Olah:  (1) a First Amendment retaliation claim based on plaintiff's allegations that defendants acted in response to plaintiff filing a prior civil rights action against defendants' coworkers, in Modica v. Cox et al., Case No. 2:11-cv-02163 DAD P;[2] (2) an Eighth Amendment claim for excessive and barbaric use

---

[2] Modica v. Cox et al., Case No. 2:11-cv-02163 DAD P, was commenced against other CCC (continued…)

3

of force; and (3) conspiracy under Section 1983 based on plaintiff's allegations that defendants acted in concert to violate plaintiff's civil rights. See ECF No. 4 at 3-4.

Defendants filed separate motions to dismiss this action on the ground that it is time-barred because commenced after expiration of the two-year statute of limitations set forth in California Code of Civil Procedure section 335.1. See ECF Nos. 18, 22. Plaintiff filed an opposition to defendant Olah's motion to dismiss. See ECF No. 21. Thereafter, in response to defendant Russell's subsequent motion to dismiss, and the motions of both defendants, plaintiff filed three matters. See ECF Nos. 27-9. While one or more of these matters may reasonably be considered an unauthorized surreply, defendants have not objected to their filing and the court finds good cause to consider the substance of each.[3] Defendants filed their respective replies on January 13, 2016. See ECF Nos. 30, 31.

III.   Legal Standards

A.   Legal Standards for Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

---

officials regarding an unrelated incident on August 15, 2011. The filing date of the action supports plaintiff's allegations that defendants herein acted in retaliation. The parties reached a settlement in June 2013, and the case was voluntarily dismissed on August 22, 2013.

[3] The Local Rules authorize the filing of a motion, an opposition, and a reply. See E.D. Cal. R. 230(b)-(d); and 230(*l*). Neither the Local Rules nor the Federal Rules authorize, as a matter of right, the filing of a surreply. Nevertheless, a district court may consider the merits of a surreply "where a valid reason for such additional briefing exists." Hill v. England, 2005 WL 3031136, at *1, 2005 U.S. Dist. LEXIS 29357 (E.D. Cal. Nov. 8, 2005) (Case No. 1:05-cv-0869 REC TAG). In the instant case, the court finds such validity in plaintiff's pro se status, the staggered filing of the motions to dismiss, and the substance of plaintiff's filings.

1   The court may consider facts established by exhibits attached to the complaint. Durning
2   v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts
3   that may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th
4   Cir. 1987); and matters of public record, including pleadings, orders, and similar papers filed with
5   the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). However,
6   "[a] motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a
7   motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the
8   motion to dismiss submits materials outside the pleadings in support or opposition to the motion,
9   and if the district court relies on those materials." Anderson v. Angelone, 86 F.3d 932, 934 (9th
10  Cir.1996).

11  A district court may dismiss an action under Rule 12(b)(6) "[i]f the running of the statute
12  is apparent on the face of the complaint," and "only if the assertions of the complaint, read with
13  the required liberality, would not permit the plaintiff to prove that the statute was tolled." Jablon
14  v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980); accord, Rivera v. Peri & Sons Farms,
15  Inc., 735 F.3d 892, 902 (9th Cir. 2013). A motion to dismiss based on the statute of limitations
16  cannot be granted "if the factual and legal issues are not sufficiently clear to permit [the court] to
17  determine with certainty whether the doctrine [of equitable tolling] could be successfully
18  invoked." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995).

19          B.      Legal Standards for Applying Statute Of Limitations

20  "[B]ecause there is no specified statute of limitations for an action under 42 U.S.C. §
21  1983, the federal courts look to the law of the state in which the cause of action arose and apply
22  the state law of limitations governing an analogous cause of action." Pouncil v. Tilton, 704 F.3d
23  568, 573 (9th Cir. 2012) (citation omitted). "For actions under 42 U.S.C. § 1983, courts apply the
24  forum state's statute of limitations for personal injury actions, along with the forum state's law
25  regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent
26  with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer v. Connell,
27  306 F.3d 930, 935-36 (9th Cir. 2002).

28  In California, the statute of limitations for personal injury actions is two years. See Cal.

1    Code Civ. Proc. § 335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).

2        This limitations period is statutorily tolled for a period of two years for person who is, "at
3    the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the
4    sentence of a criminal court for a term less than for life." See Cal. Code Civ. Proc. § 352.1(a);
5    Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000).

6        Also in California, "the applicable statute of limitations must be tolled while a prisoner
7    completes the mandatory [administrative] exhaustion process." Brown v. Valoff, 422 F.3d 926,
8    943 (9th Cir. 2005). Because administrative exhaustion is statutorily required of prisoner civil
9    rights complaints under the Prison Litigation Reform Act (PLRA), see 42 U.S.C. § 1997e(a), this
10   requirement provides a federal statutory basis to invoke the state's equitable tolling. See, e.g.,
11   Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001)

12       Additionally, "[u]nder California law, a plaintiff must meet three conditions to equitably
13   toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant
14   must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's
15   conduct must have been reasonable and in good faith." Fink v. Shedler, 192 F.3d 911, 916 (9th
16   Cir. 1999), cert. denied, 529 U.S. 1117 (2000) (citation omitted); see also Lantzy v. Centex
17   Homes (2003) 31 Cal. 4th 363, 370 ("This court has applied equitable tolling in carefully
18   considered situations to prevent the unjust technical forfeiture of causes of action, where the
19   defendant would suffer no prejudice.") (collecting cases.).

20       "Although state law determines the length of the limitations period, 'federal law
21   determines when a civil rights claim accrues.'" Azer, 306 F.3d at 936 (quoting Morales v. City of
22   Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "Under federal law, a claim accrues when
23   the plaintiff knows or has reason to know of the injury which is the basis of the action."
24   TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

25       IV.    Discussion

26       For the reasons set forth below, the court finds that the timeliness of the complaint
27   ultimately turns on complicated questions concerning statutory and/or equitable tolling that have
28   been raised by the parties' briefing and oral arguments. Resolution of those questions requires

consideration of evidence beyond the scope of the complaint, and may require findings of fact. Accordingly, the statute of limitations issue cannot be decided in the context of defendants' motions to dismiss.  See Supermail, 68 F.3d at 1207.  The court therefore recommends that defendants' motions be denied without prejudice to assertion of untimeliness as a defense, and that defendants be required to answer the complaint.

        A.  Accrual Date

Plaintiff alleges that he sustained physical and emotional injuries as a result of defendants' conduct on October 23, 2011.  Therefore, defendants identify October 23, 2011 as the accrual date of plaintiff's claims.

However, at the hearing, plaintiff suggested that a "delayed discovery" accrual date of "June 2013 or 2014" may apply, based on the date he was medically diagnosed with post-traumatic stress disorder as a result of defendants' conduct.

The delayed discovery rule "postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured."  Lukovsky v. City and County of San Francisco (9th Cir. 2008) 535 F.3d 1044, 1048 (citation omitted).  "However, this rule is already incorporated into federal accrual law[,]" which holds that "a claim accrues . . . when the plaintiff knows or has reason to know of the actual injury," and "by whom," even if plaintiff is then unaware of its legal consequences.  Id. at 1048, 1051 (citations omitted).  "[O]nce a plaintiff knows that harm has been done to him, he must . . . 'determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make.'"  Davis v. United States, 642 F.2d 328, 331 (9th Cir. 1981) (quoting United States v. Kubrick, 444 U.S. 111, 124 (1979) (statute of limitations accrued when plaintiff knew he had been injured and that the likely cause was the Sabin vaccine, without deferring accrual to date when plaintiff had reason to suspect governmental negligence)).

In the instant case, plaintiff expressly alleges that he was injured, both physically and psychologically, by defendants' allegedly unconstitutional conduct on October 23, 2011.  That plaintiff may thereafter have continued to suffer, including as a result of his later-diagnosed post-traumatic stress disorder, does not create a new and independent injury with its own accrual date.

1    Accordingly, the court agrees with defendants that the accrual date of plaintiff's claims,
2 for statute of limitations purposes, is the date of defendants' challenged conduct on October 23,
3 2011.  See TwoRivers, 174 F.3d at 991 (claims accrued when plaintiff knew or had reason to
4 know of his injury).

### B. Statutory Tolling Due To "Disability Of Imprisonment"

Under California's "disability of imprisonment" tolling statute, the commencement of a limitations period is delayed for a period not to exceed two years if the plaintiff, at the time his cause of action accrued, was "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Code Civ. Proc. § 352.1(a).[4] See Boag v. Chief of Police, City of Portland, 669 F.2d 587, 589 (9th Cir. 1982), cert. denied, 459 U.S. 849 (1982) ("disability of imprisonment" ceases upon release from incarceration or physical custody).

The parties do not dispute that plaintiff was serving a criminal sentence at the time his claims accrued on October 23, 2011, and therefore that he is entitled to tolling under Section 352.1(a),[5] through the date of his release from Avenal State Prison on December 16, 2012. However, the parties dispute whether this tolling should extend to plaintiff's mandatory residency in a treatment program to which he was transferred immediately upon his release from prison.

Defendants assert that plaintiff's disability of imprisonment ceased upon his release from prison.  If so, and absent any additional tolling, the applicable two-year limitations period, set forth in Section 335.1, commenced on December 17, 2012,[6] and concluded on December 17, 2014, rendering untimely the complaint filed on January 8, 2015.

---

[4] California Code of Civil Procedure section 352.1(a) provides in full:

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

[5] Unless otherwise noted, all "Section" references are to the California Code of Civil Procedure.
[6] Under Federal Rule of Civil Procedure 6(a)(1)(A), when a period is stated in days, the day of the event that triggers the period is excluded.

Plaintiff, on the other hand, relying on facts outside the pleadings, contends that his transfer to the mandatory residential treatment program extended his disability of imprisonment under Section 352.1(a), and continued to statutorily toll the limitations period until his completion of the mandatory portion of that program approximately 90 days later. Plaintiff explains that upon his release from prison he was immediately "ordered into Residential Drug Treatment by the Board of Parole," into the Seventh Step program at Medford House in Hayward. ECF No. 28 at 1. At the hearing plaintiff explained that his placement at Medford House, then formally designated a parole treatment facility, "was not voluntary" and that the first 90 days of his placement were a "blackout" period without access to the internet, cell phones or legal materials.

The undersigned has concluded that it appears to be a question of first impression in California's state and federal courts whether a prisoner's mandatory placement in a residential treatment program immediately upon release from prison may qualify as continued custody or "imprisonment" entitled to tolling under Section 352.1(a).[7]

---

[7] In contrast, plaintiff's further argument that his "return to custody" twice in 2014 (to the Santa Rita County Jail due to parole violations) entitles him to statutory tolling based on the disability of imprisonment is without merit. See ECF No. 29. Once the statute of limitations begins to run upon a prisoner's release from custody, tolling under the statute may not be reinstated. See Elliott v. City of Union City, 25 F.3d 800, 803 (9th Cir. 1994) ("'actual, uninterrupted incarceration is the touchstone' for assessing tolling under [former] § 352(a)(3)," that is, "continuous custody is the relevant disability") (citations omitted); see also Boag, supra, 669 F.2d at 589 (construing Oregon's tolling provision to be similar to California's and holding that "subsequent reincarceration did not reinstate the tolling statute"); Williams v. Coughlan, 244 F.2d 6, 8 (9th Cir. 1957) (construing Alaska's tolling provision similar to that of California and holding that the statute was tolled "only during the continuance of the disability which existed at the time the cause of action arose"); Smith v. Cooper, 2012 WL 1094431, at *4, 2012 U.S. Dist. LEXIS 44134 (N.D. Cal. Mar. 29, 2012) ("Tolling under § 352.1 is triggered by the plaintiff's arrest and incarceration. But if the statute of limitations starts to run again because the prisoner is released, tolling will not be reinstated by subsequent incarceration." (Citations omitted.)); Choma v. Arnold, 2012 WL 1340387, at *2, 2012 U.S. Dist. LEXIS 54532 (C.D. Cal. Mar. 19, 2012) ("A plaintiff's subsequent reincarceration does not reinstate tolling because § 352.1 tolls the limitations period only during the period of disability (i.e., incarceration) that existed at the time the cause of action accrued." (Citing Cal. Code Civ. P. § 352.1.)); report and recommendation adopted, 2012 WL 1340081, 2012 U.S. Dist. LEXIS 54596 (C.D. Cal. Apr. 17, 2012); accord, Polk v. Cavin, 2013 WL 3815245, at *7, 2013 U.S. Dist. LEXIS 102248 (N.D. Cal. July 22, 2013); Flowers v. Alameda County, 2015 WL 1393582, at *3, 2015 U.S. Dist. LEXIS 38802 (N.D. Cal. Mar. 26, 2015).

Plaintiff's argument is implicitly supported by CDCR's inclusion of "Residential Drug or Treatment Programs" in its Alternative Custody Program (ACP), which credits each day of participation in such a program as a "day of incarceration in state prison." See Cal. Code Regs. tit. 15, § 3078 et seq.[8]  Implicit support is also found in the application of "presentence custody credits," under California Penal Code section 2900.5, for each day a defendant has been "in custody" in a "rehabilitation facility" or "similar residential institution," "including days served as a condition of probation in compliance with a court order." See Cal. Penal Code § 2900.4(a).[9] See also People v. Johnson, 28 Cal. 4th 1050, 1053 (2002) (Section 2900.5 "applies to custodial time in a residential treatment facility.").[10]  Cf., Cal. Penal Code § 2931 (prisoner's participation, inter alia, in "educational, vocational [and] therapeutic" activities may be credited toward a reduction in the prisoner's sentence).

---

[8]  CDCR regulations provide in pertinent part, Cal. Code Regs. tit. 15, § 3078.1(3)(c):

> One day of participation in the ACP shall be in lieu of one day of incarceration in state prison. Participants in the program shall receive any sentence reduction credits that they would have received pursuant to [Cal. Code Regs. tit. 15] § section 3043 [concerning presentencing credits] had they served their sentence in state prison and shall be subject to denial and loss of credit pursuant to PC [Cal. Penal Code] section 2932(a) [concerning denial of time credits].

[9]  Cal. Penal Code § 2900.5(a) provides in pertinent part:

> In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, and days served in home detention pursuant to Section 1203.016 or 1203.018, shall be credited upon his or her term of imprisonment . . . .

[10]  In the Johnson decision below, the state court of appeal opined that "[t]he factual question of whether the Turning Point [residential drug treatment] program that defendant was to enter constitutes 'custody' for purposes of section 2900.5 cannot be answered on the basis of the record before us." See People v. Johnson, 88 Cal. App. 4th 420, 424-25 (2001). However, the court noted that the term "custody" for purposes of Section 2900.5 was not clearly defined. See id. at 425 n.2.

1  This court has located only one case that directly supports plaintiff's argument for extended tolling under Section 352.1(a). In McCovey v. Del Norte County, 2014 U.S. Dist. LEXIS 93582, at *6-7, ___WL ___ (N.D. Cal. July 9, 2014), the magistrate judge dismissed plaintiff's pro se prisoner civil rights action as time-barred despite finding (without analysis) that plaintiff's 33-day period of custody in a residential treatment program following his release from jail tolled the limitations period due to "the disability of incarceration" under Section 352.1(a).

The only other case located by this court that addresses this matter is Abpikar v. Harris, 2015 WL 1522423, 2015 U.S. Dist. LEXIS 43952 (N.D. Cal., Apr. 2, 2015), which is clearly distinguishable. In Abpikar the plaintiff argued that, despite his release from custody on bond on November 6, 2009, he "remained in the custody of Defendants until June 27, 2013 by way of house arrest and electronic monitoring. . . . [and] was imprisoned such that his access to the courts was so significantly impaired that it should constitute a disability for statutory tolling purposes" under Section 352.1(a). See 2015 WL 1522423 at *4. The magistrate judge rejected this argument, finding that plaintiff had "not shown that his house arrest amounted to imprisonment" for purposes of Section 352.1(a). Id.

The district court in Abpikar further noted:

> Although California courts have not addressed the issue of whether house arrest amounts to "imprisonment" under Section 352.1, the California Court of Appeal has held that an adult parolee is not entitled to tolling because parolee status "neither precluded nor significantly impaired [a plaintiff's] ability" to assert his claim while on parole. Deutch v. Hoffman, 165 Cal. App. 3d 152, 156 (Ct. App. [2d Div.]1985).

Abpikar, 2015 WL 1522423, at *4.

This citation to Deutch illustrates how some of the case law addressing the disability of imprisonment has confounded statutory and equitable tolling considerations. Although plaintiff therein was never entitled to statutory tolling (because on parole when his claims accrued), Deutch has been relied upon to conclude that the statutory disability of imprisonment ceases when a prisoner is released on parole. See, e.g., Abpikar, supra, 2015 WL 1522423; see also Wertheimer v. City of Fremont, 161 F.3d 16 (9th Cir. 1998) (unpublished decision) ("the statute [of limitations] began to run on . . . the date [plaintiff ] was first released on parole") (citing

11

Deutch, 165 Ca. App. 3d at 156).[11]  The court in Deutch also rejected plaintiff's argument that he was entitled to tolling based on his status as a parolee, finding that such status "neither precluded nor significantly impaired his ability to [timely] enforce his claim."  Deutch, 165 Cal. App. 3d at 156.  Thus, in Diamond v. Gutierrez, 967 F.2d 585 (9th Cir. 1992) (unpublished decision), the Ninth Circuit found that tolling under the disability of imprisonment was unavailable to plaintiff both because he was on probation (not imprisoned) when his cause of action accrued,[12] and "because the restrictions imposed by probation 'neither precluded nor significantly impaired his ability to enforce his claim.'"  Id. at *1 (quoting Deutch, 165 Cal. App. 3d at 156).

Alas, in Jones v. Blanas, supra, 393 F.3d 918, the Ninth Circuit clearly distinguished between the literal wording and application of Section 352.1(a), and the equitable principles underlying the statute.  In Jones, the Court of Appeals was tasked with considering whether the disability of imprisonment should apply to civil detainees who remain continuously incarcerated after expiration of their criminal sentences while awaiting evaluation, adjudication and possible commitment to the Department of Mental Health under California's Sexually Violent Predator Act.

The Court of Appeals initially held that Section 352.1 on its face does not apply to civil detainees.  See Jones, 393 F.3d at 927 ("the literal language of the statute does not cover Jones, a civil detainee").  However, noting that "'actual, uninterrupted incarceration is the touchstone' for applying California's tolling provision for the disability of imprisonment," Jones, at 928 (quoting Elliott, supra, 25 F.3d at 803 (internal citation and quotation marks omitted)), the court found that the rationale behind the rule "applies with equal force to the case of an individual continuously

---

[11] Prior to Deutch, the Ninth Circuit Court of Appeals similarly held that an Oregon plaintiff's disability of imprisonment under Oregon law "'ceased' when he was paroled.'"  Boag, supra, 669 F.2d at 589.  The Ninth Circuit relied, inter alia, on Bock v. Collier, 175 Or. 145 (1944).  However, in Bock (as in Deutch) the Oregon Supreme Court found that the disability of imprisonment never applied to plaintiff because he was not imprisoned when his cause of action accrued, and therefore found "it unnecessary . . . to decide whether or not the plaintiff's status, while on parole, was that of a person imprisoned in execution under the sentence of a court."  Id., 175 Or. at 152.

[12] Accord, Kowarsh v. Heckman, 2015 WL 2406785, at *10 (N.D. Cal., May 19, 2015) (Section 352.1(a) does not apply to plaintiff because he was on probation when his claims accrued).

detained under civil process," id.  The Court of Appeals observed that, "[l]ike criminal inmates, civil detainees litigate under serious disadvantages.  The civilly confined are limited in their ability to interview witnesses and gather evidence, their access to legal materials, their ability to retain counsel, and their ability to monitor the progress of their lawsuit and keep abreast of procedural deadlines."  Id. at 929.  Applying general principles of equitable tolling, the Ninth Circuit concluded that "California's equitable tolling doctrine operates to toll a statute of limitations for a claim asserted by a continuously confined civil detainee who has pursued his claim in good faith."  Id. at 930.

It is not as clear in the present case, as it was in Jones, that Section 352.1(a) cannot reasonably be construed to accord statutory tolling to plaintiff's continuous period of detention upon his release from prison until the conclusion of the mandatory portion of his residential treatment program.  Nevertheless, this court is precluded from reaching the matter on defendants' motions to dismiss.

Accordingly, the court now turns to plaintiff's equitable tolling arguments.

### C. Equitable Tolling

In Jones, the Ninth Circuit recounted the underlying purposes of equitable tolling, id. at 928:

> Equitable tolling under California law "'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Lantzy v. Centex Homes, 31 Cal. 4th 363, 2 Cal. Rptr. 3d 655, 660 [] (2003) (citation and internal quotation marks omitted).  The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc) (quoting Addison v. State, 21 Cal. 3d 313, 146 Cal. Rptr. 224, 225 [] (1978)) (internal quotation marks omitted).  Thus California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." Lantzy, 2 Cal. Rptr. 3d at 660 [].  Application of California's equitable tolling doctrine "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute." Id. at 660 [] (quoting Addison, 146 Cal. Rptr. at 228 [] (internal quotation marks omitted) (omission in original).

13

Although plaintiff asserts several theories for equitable tolling in this action, the court addresses only a few for the purpose of demonstrating that these matters cannot be decided on the current motions.

Plaintiff contends that the 90-day "blackout period" during his initial mandatory residency at Medford House limited his ability to pursue this action. This argument identifies many of the same practical obstacles confronting civil detainees in the pursuit of their legal claims, as identified in Jones. Applying general equitable principles and the "rationale behind the [disability of imprisonment] rule" articulated in Jones, plaintiff may be entitled to equitable tolling on this basis as a matter of fundamental fairness.

Plaintiff also seeks equitable tolling based on an "alternate legal remedies" theory, which "allows equitable tolling of the statute of limitations when a plaintiff, possessing several legal remedies, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage, thereby allowing the statutory period to run." Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (citations, internal punctuation and quotation marks omitted). The requirements for tolling under California's alternate legal remedies theory mirror the general principles underlying equitable tolling, specifically: "(1) timely notice in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend the second claim; and (3) good faith and reasonable conduct by plaintiff in filing the second claim." Stone v. City and County of San Francisco, 735 F. Supp. 340, 343 (N.D. Cal. 1990) (citation omitted); see also McDonald v. Antelope Valley Community College District, 45 Cal. 4th 88, 102 (2008).

The circumstances of this case appear to satisfy all three elements for applying equitable tolling under an alternate legal remedies theory: (1) defendants received timely notice of plaintiff's claims, pursuit to plaintiff's administrative grievance and the investigations conducted by the OIA and OIG;[13] (2) defendants have not been prejudiced in the preparation of their

---

[13] Plaintiff contends alternatively that defendants should be equitably estopped from seeking dismissal of this action because plaintiff detrimentally relied on the advice of CDCR officials to exhaust his administrative remedies and/or wait until the conclusion of the OIA investigation before filing his complaint. However, even if officials within CDCR's OIA so advised plaintiff, it appears that such advice cannot reasonably be attributed to defendants Russell and Olah.

defense;[14] and (3) it appears that plaintiff acted reasonably and in good faith.[15]

The court does not address plaintiff's further asserted grounds for equitable tolling.[16] It is clear that plaintiff's arguments raise significant factual and legal issues that cannot be fully assessed on defendants' motions to dismiss. Accordingly, defendants' motions should be denied without prejudice,[17] and defendants should be required to answer the complaint.

V.   Plaintiff's Motion to Compel

Plaintiff's motion to compel discovery from the OIG, ECF No. 23, is denied without prejudice as premature, as set forth by the court in its order filed December 18, 2015, see ECF No. 26.

VI.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion to compel discovery, ECF No. 23, is denied without prejudice.

Further, IT IS HEREBY RECOMMENDED that:

1.   The motions to dismiss filed, respectively, by defendant Olah, ECF No. 18, and defendant Russell, ECF No. 22, should be denied without prejudice; and

---

[14] See, e.g., Electronic Equipment Express, Inc. v. Donald H. Seiler & Co. (1981) 122 Cal. App. 3d 834, 847 n.3 (defendants were not prejudiced "in gathering defense evidence" because they were promptly appraised of plaintiff's claims and undertook discovery to preserve defense evidence); see also Addison, supra, 21 Cal. 3d at 317 ("It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available.").

[15] Plaintiff's complaint was filed only 22 days after expiration of the statute of limitations. Defendants argue that plaintiff was dilatory nonetheless because he filed his complaint nearly two years after he obtained the findings of the OIG investigation in January 2013, and "gave up" trying to exhaust his administrative grievance in May 2013, see ECF No. 28 at 4. At the hearing, plaintiff responded that he had significant health challenges and unstable living conditions during this period, and that his legal materials were destroyed without his knowledge in an effort to control a bed bug infestation at one of his residences, requiring that he reacquire and reassemble his materials.

[16] An exception is plaintiff's argument that he is entitled to equitable tolling for the period of time that he continued, at the behest of CDCR officials, to attempt to exhaust his administrative remedies after his release from prison. However, because plaintiff was no longer a "prisoner," within the meaning of 42 U.S.C. § 1997e(h), when he filed this action, he was not required to exhaust his administrative remedies before commencing it.

[17] Defendants may, but need not, revisit the statute of limitations question upon motions for summary judgment after the close of discovery.

15

2. Defendants should be directed to file and serve their respective answers to the complaint within 21 days after the district judge adopts these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE